UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH SANDOVAL                                CIVIL ACTION

VERSUS                                         NUMBER: 09-3060

WARDEN BURL CAIN                               SECTION: "I"(5)

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus of petitioner, Joseph Sandoval, and the State's response thereto. (Rec. docs. 1, 8). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Sandoval's petition be dismissed with prejudice.

Petitioner Sandoval is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On March 8, 2001, Sandoval was convicted in the Twenty-Fourth Judicial District Court for the Parish of Jefferson of one count of distributing heroin and one count of possession with intent to distribute heroin, violations of LSA-R.S. 40:966(A). On

April 12, 2001, Sandoval was sentenced to the statutorily mandated sentence of life imprisonment without benefit of probation or suspension of sentence on each count, to be served concurrently.[1] On February 25, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed Sandoval's convictions and sentences. State v. Sandoval, 841 So.2d 977 (La. App. 5 Cir. 2003). Writs were denied by the Louisiana Supreme Court on October 3, 2003. State v. Sandoval, 855 So.2d 308 (La. 2003).

Following the completion of his direct appeal proceedings, Sandoval sought post-conviction relief, arguing that counsel was ineffective due to his failure to file a motion to quash the indictment, that his constitutional rights were violated because his case was tried before Judge Ronald Bodenheimer who should have recused himself, and that counsel was ineffective due to his failure to object to the lack of expertise of an expert witness. On December 11, 2007, the state district court issued an order denying Sandoval post-conviction relief.[2] On March 7, 2008, the Louisiana Fifth Circuit Court of Appeal likewise denied Sandoval

---

[1] At the time the instant offenses were committed and at the time of sentencing, distribution and possession with intent to distribute heroin were punishable by a mandatory life sentence. However, effective June 15, 2001, the term of imprisonment for these offenses was reduced to not less than five nor more than fifty years at hard labor, at least five years of which shall be served without benefit of probation or suspension of sentence. See 2001 La. Acts 403, §4.

[2] A copy of the district court's Order is attached to Sandoval's habeas corpus petition.

post-conviction relief.  State v. Sandoval, No. 2008-KH-0104 (La. App. 5 Cir. 2008)(unpublished opinion).[3]  Finally, on March 13, 2009, the Louisiana Supreme Court denied Sandoval's writ application.  State v. Sandoval, 5 So.3d 111 (La. 2009).

Sandoval is now before this Court seeking federal habeas relief under §2254.  In his federal petition, Sandoval presents two of the three grounds he raised in his state post-conviction proceedings, namely, that counsel was ineffective for failing to file a motion to quash the indictment and that his constitutional rights were violated because his case was tried before Judge Ronald Bodenheimer who should have recused himself.

The State does not contest the timeliness of the instant action.  The State does, however, argue that Sandoval has failed to exhaust his state court remedies, as required under Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982), with respect to his first claim.  (Rec. doc. 8, pp. 9-10).  The basis of the State's argument is the fact that Sandoval failed to raise his claim, that counsel was ineffective due to his failure to file a motion to quash the indictment, to the Louisiana Supreme Court.  The Court concurs with the State's argument in this regard but chooses not to dismiss the claim without prejudice to allow for its exhaustion because the claim is without merit.  Under the provisions of 28 U.S.C.

---

[3]A copy of the Louisiana Fifth Circuit's unpublished opinion is attached to Sandoval's federal habeas petition.

3

§2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

**FACTS[4]**

At trial, the State presented testimony that Sandoval engaged in a hand-to-hand transaction with Terry Russell at approximately 4:45 p.m. on April 5, 2000. Earlier that day, officers from the Jefferson Parish Sheriff's Office, along with the Drug Enforcement Administration (DEA) were surveilling a residence located at 554 Sizeler Avenue in Jefferson Parish. According to Sergeant Jason Renton, the Sheriff's Office had learned that Terry Russell and another man, Kevin Bordelon, were going to obtain a quantity of heroin. Albert Baudier, who was a narcotics detective with the Jefferson Parish Sheriff's Office at the time, explained that he was positioned near the house watching for a silver Mitsubishi pickup truck with a white camper. A truck matching that description arrived at the house and later departed the residence. Detective Baudier notified the other officers of the truck's departure, and these officers followed the truck. The truck first went to a gas station where one of the occupants pumped gas, and then to the Blockbuster Video store at the intersection of Cleary Avenue and Veterans Memorial Boulevard.

---

[4] That facts recited are as reported by the State appellate court in its opinion rendered on Sandoval's direct appeal. State v. Sandoval, 841 So. 2d 977, 980-81 (La. App. 5 Cir. 2003).

4

Agent George Carcabasis testified that he was employed by the Jefferson Parish Sheriff's Office at the time of the incident, but was employed by the DEA at the time of trial. Agent Carcabasis testified that he was positioned approximately 20 to 25 yards from the Blockbuster parking lot. When the silver Mitsubishi truck arrived at the Blockbuster, Terry Russell, who was the passenger, and the driver, Kevin Bordelon, exited the truck. A woman, later identified as Mary Bocz, arrived. Agent Carcabasis observed all three people walking around the parking lot as if waiting for someone. Mary Bocz used the pay phone in the parking lot, and then all three individuals returned to their vehicles. Shortly thereafter, a man, later identified as Sandoval, pulled into the parking lot. Sandoval was accompanied by a passenger, Erin Woods.

Agent Carcabasis testified that he observed Terry Russell exit the Mitsubishi and walk to the driver's side of Sandoval's vehicle. After Russell and Sandoval held a brief conversation, Russell reached into his pocket and handed what appeared to Agent Carcabasis was money to Sandoval through the driver's side window. According to Agent Carcabasis, Sandoval handed Russell "something," which Russell immediately placed in his pocket. After they talked for a few minutes, Russell walked away. Mary Bocz then approached the driver's side window and began talking to Sandoval. Agent Carcabasis radioed the other surveilling officers of the transaction between Russell and Sandoval and told them that it

5

appeared a second transaction was taking place. Thereafter, Agent Carcabasis told the officers to "move in and effect the stop of all of the individuals involved."

Lieutenant Emile Larson of the Jefferson Parish Sheriff's Office arrested Terry Russell. According to Lieutenant Larson, Russell held one foil packet in his hand. Lieutenant Larson testified that he searched Russell incident to his arrest and found a prescription bottle in the name of Kevin Bordelon in Russell's pocket. The prescription bottle contained 17 foil packets. According to Charles Krone, the State's forensic expert, all of these foil packets contained heroin.

Sergeant Warren Bujol, a Jefferson Parish Narcotics Officer, testified that he participated in Sandoval's arrest. According to Sergeant Bujol, Sandoval was holding a Crown Royal bag which he threw to the ground when the officers removed him from the car. Sergeant Bujol testified that the Crown Royal bag contained a plastic bag containing rice and 12 foil packets, which Mr. Krone testified tested positive for the presence of heroin. The officers also found a loaded .40 caliber pistol underneath the center console of Sandoval's car. Lieutenant Larson testified that he seized $436.00 in cash from Erin Woods' purse. Agent Carcabasis testified that he seized $480.00 in cash, all in denominations of $20.00, from Sandoval's pocket.

Although Sandoval presented no evidence at trial, the theory

6

of his case, presented to the jury in closing argument, was that Sandoval attempted to purchase drugs from Russell. At most, the defense urged that Sandoval was guilty of attempted simple possession of heroin.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it

> decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

**ANALYSIS**

### Claim 1: Ineffective Assistance of Counsel Due to Failure to File Motion to Quash Indictment

The seminal Supreme Court decision regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an

8

insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371, 113 S.Ct. 838, 844 (1993) (citing <u>Strickland</u>, 466 U.S. at 690, 104 S.Ct. At 2066). To prove prejudice under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068.

Sandoval claims that his counsel was ineffective due to "counsel's failure to file a motion to quash [his] indictment based on the unconstitutional exclusion of blacks and women as grand jury fore[persons] in Jefferson Parish." (Rec. doc. 1, p. 6). In support of his claim, Sandoval cites <u>State v. Kennedy</u>, 823 So.2d 411 (La. App. 5 Cir. 2002), a case wherein Kennedy sought to quash his indictment based upon the alleged discriminatory process employed, under La.C.Cr.P. art. 413(B), to choose the foreperson of the grand jury which indicted him. According to Sandoval, his counsel's failure to similarly seek to quash his indictment constituted

9

ineffective assistance of counsel. As shown below, Sandoval's claim is without merit.

In May, 1998, when Kennedy was indicted, Article 413(B) provided that the district court would choose the grand jury foreperson from the grand jury venire while all other grand jury members would be randomly selected from the grand jury venire. Thus, one member of the grand jury panel was selected outside the random draw used to compose the balance of the panel. This non-random selection which, according to Kennedy, resulted in the unconstitutional exclusion of women from his grand jury, served as the basis for Kennedy's motion to quash his indictment.[5]

In contrast to Kennedy, Sandoval was not indicted until June of 2000. In 1999, La.C.Cr.P. art. 413(B) was amended by La. Acts 1999, No.984, §1 to provide for the random selection of all grand jury members, including the foreperson. Thus, Sandoval's counsel had no basis upon which to file a motion to quash Sandoval's indictment. As such, his failure to do so did not constitute ineffective assistance of counsel.[6]

---

[5] Kennedy's counsel conceded that the evidence on appeal did not show discrimination against Blacks as grand jury forepersons. State v. Kennedy, 823 So.2d at 413-414.

[6] Additionally, the Court notes that the Louisiana Fifth Circuit Court of Appeal in Kennedy actually found that African-Americans and women were not discriminated against in the selection of grand jury forepersons in Jefferson Parish during the time period challenged by Kennedy. State v. Kennedy, 823 So.2d at 419-420. Indeed, the Kennedy court specifically held

10

### Claim 2: Denial of Due Process Due to Failure of Judge Ronald Bodenheimer to Recuse Himself

Sandoval claims that his constitutional right to due process was violated by virtue of former Twenty-Fourth Judicial District Court Judge Ronald Bodenheimer's failure to recuse himself from presiding over Sandoval's trial. The basis of Sandoval's claim is the fact that at the time of his trial, Judge Bodenheimer was under investigation by the Jefferson Parish Sheriff's Office, along with the Federal Bureau of Investigation. Sandoval alleges that Jefferson Parish Sheriff Deputy Albert Baudier "played a critical part" not only in the investigation which led to Sandoval's arrest and ultimate conviction, but also in the investigation of Judge Bodenheimer, an investigation of which Judge Bodenheimer was aware at the time he presided over Sandoval's trial. (Rec. doc. 1, p. 8). As a result of this pending investigation, Judge Bodenheimer, according to Sandoval, was placed in the untenable position of having to judge the credibility of Jefferson Parish Sheriff Deputies "who held Judge Bodenheimer's fate in their hands". (Rec. doc. 1, p. 8). With the proverbial "sword of Damocles" being held above Judge Bodenheimer's head, Sandoval asserts that the judge could not be fair in presiding over the trial and, therefore, should have recused himself. As shown below, Sandoval's claim is without merit.

---

that the defendant had failed to make a prima facie showing of purposeful discrimination in the selection of grand jury forepersons. State v. Kennedy, 823 So.2d at 420.

First, Sandoval offers no specifics regarding alleged errant credibility determinations on the part of Judge Bodenheimer. A possible explanation for this lack of evidence is the fact that Sandoval was tried before a jury. As such, the jury, as opposed to Judge Bodenheimer, was the trial factfinder charged with judging the credibility of the witnesses.

Second, Sandoval names one particular witness, Jefferson Parish Sheriff Deputy Albert Baudier, whose trial testimony, according to Sandoval, was particularly problematic since Baudier "played a critical part" in the sheriff office's investigation of him, as well as its investigation of Judge Bodenheimer. However, a review of the pertinent transcript (state rec., vol. 2 of 6, pp. 323-335) reflects that Baudier was not a pivotal player in the sheriff office's case against Sandoval. As the State correctly observed:

> Agent Baudier's role was limited to explaining the sequence of events which led [to Sandoval's] arrest. Indeed, Agent Baudier's role as a witness was limited to explaining the initial surveillance of Terry Russell and Kevin Bordelon. He was not present for the drug transaction for which [Sandoval] was charged, he was not involved in [Sandoval's] arrest, and he did not testify regarding the drug transaction or [Sandoval's] arrest.

Rec. doc. 8, p. 19. See also State v. Sandoval, 841 So.2d at 980.

To warrant federal habeas corpus relief, Sandoval has the burden of showing that Judge Bodenheimer, in presiding over his trial, committed an error which had a "substantial and injurious

12

effect on his verdict." See Brecht v. Abrahamson, 507 U.S. 619, 637-638, 113 S.Ct. 1710, 1721-1722 (1993) (holding that the standard for determining whether federal habeas relief must be granted is whether the trial error "had substantial and injurious effect or influence in determining the jury's verdict"). Clearly, Sandoval has made no such showing. As the Louisiana Fifth Circuit Court of Appeal properly observed:

> Relator alleges that the trial court erred in dismissing his application for post-conviction relief without an evidentiary hearing. In that application he alleged that the trial court should have recused itself. In denying the application for post-conviction relief, the court noted that the relator's complaint was **entirely speculative**, and that the defendant failed to meet his burden of establishing that he is entitled to post-conviction relief, LSA-C.Cr.P. art. 930.2. Our review of the defendant's application in this Court finds no error in that determination.

State v. Sandoval, No. 2008-KH-0104 (La. App. 5 Cir. 2008) (unpublished opinion) (emphasis added).[7]

Accordingly;

**RECOMMENDATION**

It is hereby recommended that the application for federal habeas corpus relief of Joseph Sandoval be dismissed with prejudice.

A party's failure to file written objections to the proposed

---

[7] A copy of the Louisiana Fifth Circuit's unpublished opinion is attached to Sandoval's federal habeas petition.

findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 16th day of October, 2009.

*ALMA L. CHASEZ*
ALMA L. CHASEZ
United States Magistrate Judge